## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

|  |  |  |
|---|---|---|
| WILLIAM M. MOORE, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 3:07-cv-5658-FLW |
| | : | |
| | : | |
| v. | : | |
| | : | |
| TURNER CONSTRUCTION | : | |
| COMPANY; JOHN DOES (1-5); | : | |
| ABC CORPORATIONS (1-15) | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| PATRICK O'FLAHERTY, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 3:08-cv-0867-FLW |
| | : | |
| | : | |
| v. | : | |
| | : | |
| TURNER CONSTRUCTION | : | **OPINION** |
| COMPANY; JOHN DOES (1-5); | : | |
| ABC CORPORATIONS (1-15) | : | |
| | : | |
| Defendants. | : | |
| | : | |

_____ :

**WOLFSON, United States District Judge:**

Presently before the Court are motions by Defendant Turner Construction ("Defendant") to dismiss individual Complaints brought by Plaintiffs Patrick O'Flaherty ("O'Flaherty") and William Moore ("Moore") for failure to bring suit within the statute of limitations.  In the alternative, Defendant moves to have the plaintiffs' claims transferred to the Southern District of New York, pursuant to 408(b)(3) of the Air Transportation System Safety and Stabilization Act ("ATSSSA").  Both O'Flaherty and Moore allege that Defendant was in breach of contract when it failed to compensate them for their services in connection with construction and clean-up work at Ground Zero.

## I. FACTUAL BACKGROUND

Since Defendant moves to dismiss the plaintiffs' Complaints pursuant to Fed. R. Civ. P. 12(b)(6), all facts alleged in the complaint are assumed to be true.

Defendant is a construction company that conducts operations throughout the United States. O'Flaherty Compl. ¶ 1.  After the attacks on the World Trade Center ("WTC") on September 11, 2001, the City of New York retained Defendant's services for debris removal and cleanup operations at Ground Zero.  Both plaintiffs "reported to ground zero. . .to assist in the rescue and recovery efforts" and allege they worked at the site "over the course of the next month or so." Id. ¶2. Each plaintiff, according to their respective Complaints, had a different role in the cleanup operation.  O'Flaherty was retained by Defendant as an independent contractor. Id. ¶5.  In order to be paid for his services, O'Flaherty submitted a W-4 and signed a disclaimer with Defendant. Id. ¶6. Moore, too, was an independent contractor working for Turner but was also named Branch Chief in the Joint Task Force operated by the Office of Emergency Management for the City of New York. Moore Compl. ¶¶4-6.  Moore was sponsored for this position by his union,

2

Teamsters Local 469. Id. ¶ 7. Additionally, Moore provided Defendant with his normal hourly

rates and benefits package. Id. ¶8. Upon completion of the cleanup operation, both plaintiffs

allege they were not compensated for their services. Id. ¶9; O'Flaherty Compl. ¶7.  Numerous

attempts made by both plaintiffs to secure their past due wages have allegedly failed. Moore

Compl. ¶8; O'Flaherty Compl. ¶10.

Moore and O'Flaherty filed separate causes of action in New Jersey Superior Court,

Monmouth County Vicinage on January 15, 2008 and October 27, 2007 respectively.  Both

actions were removed by Defendant to the United States District Court for the District of New

Jersey.

## II. DISCUSSION

### A. Standard of Review

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations

as true, construe the complaint in the light most favorable to the plaintiff, and determine whether,

under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v.

County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted).

Recently, in Bell Atlantic Corporation v. Twombly, 127 S.Ct. 1955 (2007), the Supreme Court

clarified the 12(b)(6) standard. Specifically, the Court "retired" the language contained in Conley

v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to

state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support

of his claim which would entitle him to relief." Id. at 1968 (quoting Conley, 355 U.S. at 45-46).

Instead, the factual allegations set forth in a complaint "must be enough to raise a right to relief

above the speculative level." Id. at 1965. As the Third Circuit has stated, "[t]he Supreme Court's

3

<u>Twombly</u> formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." <u>Phillips</u>, 515 F.3d at 234 (quoting <u>Twombly</u>, 127 S.Ct. at 1965).

**B. ATSSSA Transfer**

At the onset, this Court must satisfy itself that there is proper subject matter jurisdiction over the case at bar. <u>Liberty Mut. Ins. Co. v. Ward Trucking Corp.</u>, 48 F.3d 742, 750 (3d Cir.1995) ("[T]he general rule that federal courts have an ever-present obligation to satisfy themselves of their subject matter jurisdiction and to decide the issue sua <u>sponte</u> applies equally in removal cases.").[1]  Defendant claims that the Southern District of New York is vested with exclusive jurisdiction over Plaintiffs' claims.  Specifically, Defendant contends that the Air Transportation System Safety and Stabilization Act ("ATSSSA") requires the plaintiffs' breach of contract claims to be brought in the Southern District of New York because the factual allegations arise out of cleanup work related to the terrorist attacks of September 11, 2001.

ATSSSA states, in pertinent part, that:

> The United States District Court for the Southern District of New York shall have original and exclusive jurisdiction over all actions brought for any claim (including any claim for loss of property, personal injury or death) resulting from

---

[1]In its Notice of Removal for both cases, Defendant offered two grounds for proper removal: (1) the Southern District of New York's exclusive jurisdiction over September 11th-related litigation as provided for by 408(b)(3) of the Air Transportation and System Safety and Stabilization Act ("ATSSSA"), discussed <u>infra</u>; and (2) the federal officer removal statute, codified at 28 U.S.C. § 1442(a)(1), discussed <u>infra</u>.  First, the Court will address whether ATSSSA mandates transfer of this case to the Southern District.  Second, the Court will determine whether removal was proper pursuant to 1442(a)(1).

or relating to the terrorist-related aircraft crashes of September 11, 2001.

ATSSA § 408(b)(3).  The Act's underlying purpose in consolidating jurisdiction over these claims into one forum "was to ensure consistency and efficiency in resolving the many expected actions arising from the events of September 11." The Canada Life Assurance Co. v. Convervium Ruckversicherung AG, 335 F.3d 52, 59 (2d Cir. 2003) (citing Cong. Rec. S9594 (Sept. 21, 2001)).  Nonetheless, the broad jurisdictional grant of "any claim resulting from or relating to. . . September 11" has been construed to not include actions claiming "economic losses that would not have been suffered 'but for' the events of September 11 but otherwise involve no claim or defense raising an issue of law or fact involving those events."  Id.; Combined Insurance Co. Of America v. Certain Underwriters at Lloyd's London, 75 Fed. Appx. 799, 801 (2d Cir. 2003) (concurring with the Canada Life Court that this interpretation is "compelled by the language of the provision, canons of statutory construction, section 408(b)(3)s legislative purpose, and the need for judicial efficiency.").  In declining to extend 408(b)(3) to economic harms alleged to be a "but for" consequence of the September 11th attacks, the Second Circuit stated:

> We note at the threshold that appellant's jurisdictional theory is not simply that its claims can be brought in the Souther District of New York.  Because Section 408(b)(3) provides exclusive jursdiction, [plaintiff's] theory necessarily is that its breach of contract action must be brought in the Southern District and cannot be brought anywhere else at least in the United States.  In that context, the words "all actions brought for any claim. . . resulting from or relating to" the events of September 11, 2001 must be read either to draw the jurisdictional line short of litigation involving economic losses that are related to those events only as a "but for" consequence or to lead to absurd results.

Canada Life, 335 F.3d at 57.

The dispositive inquiry in determining whether ATSSSA's jurisdictional grant applies is

whether the actual events of September 11th are relevant to the dispute.  Thus, issues of contract interpretation wholly unrelated to the underlying facts and circumstances of the September 11th attacks do not fall within the purview of 408(b)(3)'s exclusive jurisdictional grant.  Combined Insurance Co. of America, 75 Fed. Appx. at 801 (citing Canada Life, 335 F.3d at 52) (finding that because the parties' contractual dispute  "d[id] not require the deciding court to refer to or choose among competing descriptions of the events of September 11th itself," 408(b)(3) did not vest the Southern District of New York with exclusive jurisdiction over the claim).  In Combined Insurance Co. of America, the Second Circuit determined that allowing the case to be heard in another forum did not create a risk of "inconsistent and inefficient judgements across the spectrum of September 11th-related litigation, which is what section 408(b)(3) truly seeks to avoid." Id.; see also WTC Captive Insurance Co., Inc. v. Liberty Mutual Fire Insurance Co., 537 F. Supp. 2d 619, 625 (S.D.N.Y. 2008) (finding, inter alia, that insurance contract claims not involving "the World Trade Center, or limitations on rights and recoveries provided by the ATSSSA" fall within the province of state law.).

Here, Defendant advances a similar argument as made in Canada Life.  In support of this argument, Defendant relies on McNally et al v. Port Authority et al, 414 F.2d 352 (2d Cir. 2005), which held 408(b)(3)'s exclusive jurisdictional grant included personal injury claims of recovery workers at Ground Zero.  Defendant contends that because the McNally personal injury claims arose out of facts and circumstances occurring weeks and months after the September 11th attacks, a contract dispute involving workers similarly situated to the McNally plaintiffs precludes them from bringing this action in any other forum. This Court disagrees.  Defendant's position "would lead to absurd results," namely, mandating that the Southern District of New

York handle a "tsunami of actions" that share no common nucleus of facts arising from the events of September 11th.  See Canada Life, 335 F.3d at 59 (warning that a similar position on 408(b)(3) would result in "[v]ast numbers of civil defendants in courts other than the Southern District [being] able to claim that they have been sued in a court that lacks jurisdiction.").

Moreover, McNally is distinguishable from the case at bar because unlike the McNally plaintiffs who sought personal injury damages, which are explicitly allotted for in 408(b)(3), the plaintiffs here seek compensatory damages to alleviate economic harms that arose from a contractual dispute where the basis for the contract was a "but for" consequence of the September 11th attacks.  See McNally, 414 F.2d at 352.  If this Court were to decide this matter on a motion for summary judgment, for example, it would not need to determine whether there are factual disputes arising out of the events occurring on September 11th.  In sum, Defendant offers an even more attenuated connection to September 11th than the Canada Life plaintiff, whose reinsurance losses were a direct "but for" consequence of the September 11th attacks. Accordingly, Defendant's motion to transfer venue to the Southern District of New York pursuant to 408(b)(3) is denied.

**C. Subject Matter Jurisdiction Pursuant to 1442(a)(1)**

Alternatively, Defendant asserts that removal is proper in this matter pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1).  In response, the plaintiffs both object to this Court's subject matter jurisdiction, contending that the matter entails state law claims with no basis for federal jurisdiction.[2]

---

[2]Both plaintiffs assert in their opposition papers to this Motion that although the parties are of diverse citizenship, neither plaintiff is claiming $75,000 in damages.

The federal officer removal statute, 28 U.S.C. § 1442(a)(1), "directs that an action in state court brought against an officer, or person acting under that officer, of the United States or an agency thereof, for any act under color of such office may be removed to federal court." N.J. Dep't of Environmental Protection v. Exxon Mobil Corp., 381 F. Supp. 2d 398, 401 (D.N.J. 2005). Removal pursuant to the federal officer removal statute is proper if a defendant can establish that:

> (1) it is a "person" within the meaning of the statute; (2) the plaintiff's claims are based upon the defendant's conduct "acting under" a federal office; (3) it raises a colorable federal defense; and (4) there is a casual nexus between the claims and the conduct performed under color of a federal office.

Feidt v. Owens Corning Fiberglas Corp., 153 F.3d 124, 127 (3d Cir. 1998) (citation omitted). This burden of demonstrating there is jurisdiction under 1442(a)(1) rests squarely with the defendant. Moreover, where the defendant seeking removal is a private party, the defendant "'bear[s] a special burden of establishing the official nature of [its] activities.'" Exxon Mobil, 381 F. Supp. 2d at 403 n.5. Private party defendants must carry this heightened burden because "the policy reasons for generally favoring removal and the existence of federal jurisdiction under section 1442 are not applicable." Orthopedic Specialists of New Jersey PA v. Horizon Blue Cross/Blue Shield of New Jersey, 518 F. Supp. 2d 128, 133 (D.N.J. 2007) (citation omitted). Finally "[w]hile [1442(a)(1)] is to be liberally construed, it must nevertheless be interpreted with the highest regard for the right of the states to make and enforce their own laws in the field belonging to them under the Constitution." Joseph v. Fluor Corp., 513 F. Supp. 2d 664 (E.D.La. 2007) (quoting Preston v. Tenet Healthsystem Memorial Medical Center, Inc., 463 F. Supp. 2d 583, 590 (E.D.La. 2006).

Here, the Court will discuss each of the four factors. First, the Court will determine whether Defendant is a person under 1442(a)(1).  Second, because "[m]any courts [have] combine[d] the second and fourth components into one analysis," this Court will analyze whether Defendant was under direct or detailed control of a federal officer and if there was a casual nexus between Defendant's conduct and the plaintiffs' claims. Exxon Mobil, 381 F. Supp. 2d at 403 n.7. Finally, this Court will determine if Defendant has asserted a colorable federal defense.

**1. Defendant's Status as a "Person"**

Defendant's status as a "person" under 1442(a)(1) has not been challenged by the plaintiffs. Courts have consistently recognized that for the purposes of 1442(a)(1), a corporation such as Defendant qualifies as a person . In re Methyl Butyl Ether Products Liability Litigation, 488 F.3d 112, 124 (2d Cir. 2007) ("[I]t is clear that corporations are 'persons' within the meaning of the [1442(a)(1)] statute."); Orthopedic Specialists, 518 F. Supp. 2d at 134; Exxon Mobil, 381 F. Supp. 2d at 403 n.6; Crackau v. Kucent Technologies, 2003 WL 21665135, at *2 (D.N.J. Jun. 25, 2003). Accordingly, this Court will assume that Defendant satisfies the first prong of the Feidt factors.

**2. Whether Defendant "Acted Under" a Federal Office**

The second and fourth Feidt factors require a private party requesting removal pursuant to 1442(a)(1) to "demonstrate that it performed the complained-of activity at the direction of official federal authority." Orthopedic Specialists, 518 F. Supp. 2d at 134 (emphasis in original); New Jersey Dep't of Environmental Protection v. Dixo Company, Inc., No. 06-1041, 2006 WL 2716092, *3 (D.N.J. Sept. 22, 2006) (limiting the court's 1442(a)(1) analysis to the complained-of activity, the disposal of hazardous waste on private property in New Jersey). Specifically, a

9

defendant must show that the action in question was taken under the direct and detailed control of a federal officer. Id.  "[T]his control requirement can be satisfied by strong government intervention and the threat that a defendant will be sued in state court based upon actions taken pursuant to federal direction." Exxon Mobil, 381 F. Supp. 2d at 404 (citation omitted); Good v. Armstrong World Industries, Inc., 914 F. Supp. 1125, 1128 (E.D.Pa. 1996) (holding that removal is proper when the acts in question are "performed pursuant to an officer's direct orders or comprehensive and detailed regulations.") Conversely, if a private party only establishes that the acts in question "occurred under the general auspices of federal direction," removal is improper. Good Armstrong, 914 F. Supp. at 1128.

For example, in Joseph v. Fluor Corp., 513 F. Supp. 2d. 664 (E.D.La. 2007), the district court held that a private party who supplied trailers to FEMA in the wake of Hurricane Katrina could not invoke the federal officer removal statute in a cause of action arising out of personal injuries from a gas explosion in a trailer that the defendant supplied.  The court stated that "[a]lthough FEMA's purchase orders 'establish some basic parameters within which services [were] to be performed,' Guillory, 872 F. Supp. at 348, it is simply not the case that private entities are entitled to a federal forum whenever litigation arises concerning products sold to the federal government." Joseph, 513 F.Supp 2d at 673.

Additionally, an examination of the case law illustrates that a causal nexus is one where the complained-of action is closely related to direct federal control. Exxon Mobil, 381 F. Supp. at 404-05; Bahrs v. Hughes Aircraft Co., 795 F. Supp. 965, 970 (D.Ariz. 1992) (finding removal was improper where government involvement in the production of war materials was not closely related to action in dispute, waste disposal).  In Exxon Mobil, the State of New Jersey alleged

10

that the defendant violated the New Jersey Spill Compensation and Control Act in connection with the defendant's unlawful disposal of waste in various parts of New Jersey.  381 F. Supp. 2d at 404. The defendant argued that because its manufacturing and production operations were under the detailed control of the federal government, the action could be removed to federal court. Id.  In remanding the action to state court, the district court concurred with the plaintiff's argument that the "[d]efendant ha[d] failed to demonstrate a causal nexus between the allegations of improper disposal of toxic substances into the waters of the State of New Jersey and those of Defendant's actions directed by an officer of the federal government." Id.

In the instant matter, Defendant contends that "[f]ederal agencies and officers exercised control over particular health, safety and other issues relating to the rescue, recovery, cleanup, debris removal and/or construction efforts at the World Trade Center ("WTC") site following the attacks on September 11, 2001."  Additionally, Defendant asserts that the funds for the rescue and cleanup removal were provided by FEMA.  Nonetheless, Defendant's vague assertion of federal control over its cleanup operations does not rise to the level of "direct or detailed control."  In its notice of removal, Defendant does not contend that FEMA mandated or authorized it to withhold paychecks from the plaintiffs. Much like Joseph, where FEMA provided broad guidelines when contracting to purchase the defendant's trailers, here, Defendant was given broad safety and procedural guidelines in which to perform the cleanup operation and was paid by FEMA accordingly. See Joseph, 513 F.Supp 2d at 673.  Moreover, the gravamen of the plaintiffs' Complaints does not arise out of FEMA's guidelines or supervision of Defendant's work.  Instead, the injury flows from Defenant's alleged failure to compensate the plaintiffs for their work at Ground Zero. Accordingly, this Court finds that

11

Defendant has failed to satisfy the second <u>Feidt</u> prong.

Moreover, Defendant does not present any evidence or make any claims that would give rise to a causall nexus between FEMA's control of Defendant's cleanup operations and its alleged failure to pay the plaintiffs.  Much like the defendant in <u>Exxon Mobil</u> where the district court did not find any connection between the federal governmental regulation and the illegal waste disposal, the health and safety guidelines proffered by FEMA are in no way related to Defendant's alleged failure to pay the plaintiffs. <u>See</u> 381 F. Supp. 2d at 404-05. Accordingly, due to Defendant's failure to offer any evidence that FEMA or any other federal agency exercised control over Defendant's obligation to pay its workers, this Court finds Defendant has not demonstrated a causal nexus as required by <u>Feidt</u>.

### 3. Whether Defendant Raises a Colorable Federal Defense

The Court notes it is not obligated to determine whether Defendant has raised a colorable federal defense since the Court's analysis as to the second and fourth prongs are dispositive. <u>See</u> <u>Orthopedic Specialists</u>, 518 F. Supp. 2d at 128 (declining to analyze the third and fourth prongs of the <u>Feidt</u> analysis after finding the defendant was not under the direct or detailed control of a federal officer). Nonetheless, assuming <u>arguendo</u> that Defendant demonstrated that its decision not pay the plaintiffs came under the direct or detailed control of a federal officer, Defendant must also establish a colorable federal defense to satisfy the <u>Feidt</u> analysis.

In order to remove an action from state to federal court under 1442(a)(1), a defendant must raise a colorable defense under federal law.  The defense need not be meritorious; instead, the defendant must demonstrate that "a colorable claim to such a defense has been made." <u>Exxon Mobil</u>, 381 F. Supp. 2d at 403.  "Questions regarding the merits of an asserted defense are

12

distinct and have no connection to the question of jurisdiction." New Jersey Dep't of

Environmental Protection v. Viacom, Inc., No. 06-1753, 2006 WL 3534364, at *3 (D.N.J. Dec.

7, 2006) (citing Mesa v. California, 489 U.S. 121, 129 (1989)). Thus, the assertion of a specific

federal defense such as official immunity pursuant to the Federal Tort Claims Act, the

government military contractor defense established in Boyle v. United Technologies Corp., 487

U.S. 500 (1988), or the nonmilitary contractor defense as set forth in Carley v. Wheeled Coach,

991 F.2d 117 (3d Cir. 1993) satisfy the defendant's burden under Fiedt. See e.g., Viacom, 2006

WL 3534364 at * 3 (finding that cursory assertions of specific federal defenses such as the

government contractor defense and federal preemption defense were sufficient to satisfy Feidt);

Exxon Mobil, 381 F. Supp. 2d at 403 (recognizing that a private party defendant may assert the

military and nonmilitary contractor defenses for the purposes of 1442(a)(1) removal).

  Here, Defendant's assertion of a federal defense is not pellucid. Indeed, Defendant's Notice

of Removal baldly asserts that because it complied with federal directives in conducting its

cleanup operations, it "has at least a colorable federal immunity defense." Defendant's Moore

Notice of Removal ¶ 9. However, Defendant's reference to a general federal defense does not

satisfy the standard set forth in the applicable case law. See e.g., Thompson v. Wheeler, 898

F.2d 406, 409-10 (3d Cir. 1990) (determining that the defendant had a viable "source [for] his

federal defense" when he raised the Federal Tort Claims Act); Viacom, 2006 WL 3534364 at

*3; Exxon Mobil, 381 F. Supp. 2d at 403; Miller v. Diamond Shamrock Co., 275 F.3d 414, 418

(5th Cir. 2001) (finding defendant properly asserted a colorable federal defense when it claimed

immunity under the military contractor defense). Accordingly, this Court finds that Defendant

has not raised a colorable defense under federal law.

13

**III. CONCLUSION**

For the foregoing reasons, both plaintiffs' Complaints are remanded to New Jersey Superior Court, Monmouth County Vicinage.


Dated October 24, 2008                                    /s/ Freda L. Wolfson_____
                                                         Freda L. Wolfson, U.S.D.J.